**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| DENISE TRLICA a/k/a DENISE MILANI, DESSIE MITCHESON, JESSICA BURCIAGA, and ROSA ACOSTA | Case No. |
| Plaintiffs, | |
| - against - | **COMPLAINT** |
| SHERRIES SHOW BAR, INC. d/b/a DESIRE GENTLEMEN'S CLUB and GEORGE J. ZAGANAS, | **(Jury Trial Demanded)** |
| Defendant. | |

Plaintiffs DENISE TRLICA a/k/a DENISE MILANI, DESSIE MITCHESON, JESSICA BURCIAGA, and ROSA ACOSTA, (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against Defendant SHERRIES SHOW BAR, INC. d/b/a DESIRE GENTLEMEN'S CLUB and GEORGE J. ZAGANAS ("Defendants") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Desire Gentlemen's Club located in Baltimore, Maryland ("Desire" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's

- 1 -

image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of each Plaintiff's common law right of publicity;  d) violation of the Maryland's Consumer Protection Act, West's Ann. Md. Code, Commercial Law § 13-301; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using their Images to promote any Club, via any medium.

## **JURISDICTION & VENUE**

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant Sherries Show Bar, Inc. is a corporation formed under the laws of the state of Maryland, with its principal place of business located at 3821 Pulaski Hwy, Baltimore, Maryland 21224. Sherries Show Bar, Inc. operates Desire Gentlemen's Club, also known as Desire, which is located at 3821 Pulaski Hwy, Baltimore, Maryland 21224.

7.      Venue is proper in the United States District Court for the District of Maryland because Baltimore, Maryland is Defendants' principal place of business.

8.      A significant portion of the alleged causes of action arose and accrued in Baltimore, Maryland and the center of gravity for a significant portion of all relevant events alleged in this

complaint is predominately located in Baltimore, Maryland.

## PARTIES

*Plaintiffs*

9.      Plaintiff Denise Trlica a/k/a Denise Milani ("Milani") is a well-known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff, Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

11.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

12.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendant*

13.     According to publicly available records, defendant Sherries Show Bar, Inc. is formed under the laws of the state of Maryland.  During times relevant to this action, Sherries Show Bar, Inc. operated Desire Gentlemen's Club in Baltimore, Maryland.

14.     According to publicly available records, and upon information and belief, defendant George J. Zaganas in his capacity as principal, owner and/or CEO of Sherries Show Bar, Inc. maintained operational control over DESIRE, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

15.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

16.     Plaintiffs' careers in the modeling industry place a high degree of value on their

- 3 -

good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

17.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendant in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Desire.

18.    In the case of every Plaintiff, such appearance was false.

19.    Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

20.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

21.    Milani is the world's most famous pinup model, who is frequently named one of the most searched women on the internet. At one point, her self-titled website was the most popular model website in the world. Milani also became the winner of Miss Bikini World 2007. At 21, Milani was given an opportunity to model for SPORTSbyBROOKS as a sports model and posed for such publications as PinupFiles.com. In 2009, Milani was selected as the 99th most desired woman in the world by Askmen Magazine. In 2011, she was ranked in the 5th position in championship NPC Excalibur Bikini held in Culver City, California. Similarly, in the year 2013,

she was one of ten (10) most desirable women in the world. Milani's social media reach has hit over 660 thousand followers on Instagram, 6.3 million Facebook likes, and over 126 thousand followers on Twitter.

22.    That we know of, Milani is depicted in the photos in Exhibit "A" to promote Desire on its Facebook page. This Image was intentionally altered to make it appear that Milani was either a stripper working at Desire that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

23.    Milani has never been employed at Desire, has never been hired to endorse Desire, has never been otherwise associated or affiliated with Desire, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

24.    Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson entered Maxim magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned Maxim magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on Maxim's "Hot 100" list. She has graced the pages of multiple issues of Maxim, including a three-page spread, two centerfolds, and the cover for the May 2014"Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.

25.    That we know of, Mitcheson is depicted in the photos in Exhibit "B" to promote Desire on its Facebook page. This Image was intentionally altered to make it appear that Takeguma was either a stripper working at Desire that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

26.    Mitcheson has never been employed at Desire, has never been hired to endorse Desire, has never been otherwise associated or affiliated with Desire, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

27.    Burciaga is a model and a business owner of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's* "Neighborhood Knockout" contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

28.    That we know of, Burciaga is depicted in the photos in Exhibit "C" to promote Desire on its Facebook page. This Image was intentionally altered to make it appear that Burciaga

- 6 -

was either a stripper working at Desire that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

29.    Burciaga has never been employed at Desire, has never been hired to endorse Desire, has never been otherwise associated or affiliated with Desire, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.    Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor's in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002.Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over36thousand Facebook followers, over 1.6 million Instagram followers, and over 291 thousand Twitter followers.

31.    That we know of, Acosta is depicted in the photos in Exhibit "D" to promote Desire on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either a stripper working at Desire that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.     Acosta has never been employed at Desire, has never been hired to endorse Desire, has never been otherwise associated or affiliated with Desire, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

33.     Upon information and belief, Defendants operated, during the relevant time period, Desire, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

34.     Upon information and belief, and in furtherance of its promotion their promotion of Desire, Defendants own, operate and control Desire's social media account, including its Facebook account.

35.     Defendants used Desire's Facebook account to promote Desire, and to attract patrons thereto.

36.     Defendants did this for their own commercial and financial benefit.

37.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Desire, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

38.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Desire to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

39.     As Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Desire and at no point have any of the Plaintiffs ever endorsed Desire, or otherwise been affiliated or associated with Desire.

40.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendant did not compensate Plaintiffs for their use of their Images.

41.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

42.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

43.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

44.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Desire by and through various marketing and promotional mediums including,

without limitation, Desire's Facebook.

45.    Defendants showcased Plaintiffs' Images on Desire's social media pages to create the false impression that Plaintiffs worked at Desire, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

46.    Defendants did so to attract clientele to Desire, promote Desire, and thereby generate revenue for Defendant.

47.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Desire.

48.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

49.    In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

50.    At no point were any of the Plaintiffs ever affiliated with Desire, or Defendants.

51.    Each of Plaintiffs' Images was used without her consent.

52.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendant, to request the use of any of Plaintiffs' Images.

53.    Defendants did not obtain, either directly or indirectly, permission to use any of Plaintiffs' Images.

54.    Defendants did not pay any Plaintiff for its use of her Images on any promotional materials, including Desire's Facebook account.

55.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

56.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

57.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

58.     The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

59.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Desire or agreed to appear in Desire's advertisements.

60.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

61.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Desire.

62.     Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

63.     Despite the fact that the Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with the Club.

64.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

65.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause

consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

66.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

67.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

68.    The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

69.    Defendants used Plaintiffs Images in order, inter alia, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Desire, or worked at, sponsored, or approved of Desire's goods, services or commercial activities.

70.    This was done to promote and attract clientele to Desire, and thereby generate revenue for the Defendants.

71.    Thus, this was done in furtherance of Defendants' commercial benefit.

72.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Desire, nor worked at, sponsored, or approved of Desire's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Desire.

73.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at

the Club.

74.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

75.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Right of Privacy)**

76.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

77.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Maryland law.

78.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

79.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Desire's website or related social media accounts as part of Defendants' advertising campaign.

80.     At all relevant times, Desire's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

81.     Desire's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

82.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently

undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

83.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

84.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

85.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Desire.

86.    At no point did Defendants ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

87.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

88.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

89.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FOURTH CAUSE OF ACTION
### (Right of Publicity)

90.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

91.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

92.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

93.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Desire's advertising.

94.    Defendants did so without any Plaintiff's consent, written or otherwise.

95.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

96.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

97.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

98.    At no point did Defendant ever compensate Plaintiffs for its use of their Images.

99.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
**(Maryland's Consumer Protection Act, West's Ann. Md. Code, Commercial Law § 13-301)**

100.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

101.    Defendants operated Desire's website and social media accounts in order to promote Desire, to attract clientele thereto, and to thereby generate revenue for Defendants.

102.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Maryland.

103.    Defendants published Plaintiffs' Images on Desire's website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club.

104.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

105.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Maryland law.

106.    Defendants advertising practices offends the public policy of Maryland insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

107.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Desire.

108.    Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Desire.

109.    There are no benefits to Defendants advertising practices as set forth hereon except a benefit to Defendant own commercial interests.

110.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs'

Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

111.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

112.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

113.    As detailed throughout this Complaint, Defendants haves published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

114.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

115.    None of these representations were true.

116.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club or endorsed the Club.

117.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

118.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club,

had not consented to the use of their Images, and had not been compensated for the use of their Images.

119.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

120.    Defendants' publication of Plaintiffs' Images constitutes defamation under Maryland law because said publication falsely accuses Plaintiff of having acted in a manner—i.e., working as a stripper and/or endorsing a strip club—which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

121.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under Maryland law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

122.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional entertainer and/or promoting as strip club, an inference which Defendants' publication of the Images support.

123.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under Maryland law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

124.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

125.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

126.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

127.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

128.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

129.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

130.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

131.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these

policies, along with Federal and Maryland law, were not violated. Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

132. Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

133. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

134. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

135. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

136. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

137. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

138. Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

139. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

140. Defendants' publication was for the purpose of creating a false impression to the

general public that Plaintiffs were either strippers working at the Club, or endorsed the Club.

141. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

142. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

143. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

144. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

145. As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

146. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

147. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

148. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

149. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant has not compensated Plaintiffs.

150.    Plaintiffs are therefore entitled to reasonable compensation for the Club's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote the Club;

(c) For punitive and/or treble damages under the Lanham Act, 15 U.S.C.§ 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Maryland's Consumer Protection Act; and,

(e)    For such other and further relief as the Court may deem just and proper

Respectfully submitted,

THE PLAINTIFFS, DENISE "MILANI" TRLICA a/k/a DENISE MILANI, DESSIE MITCHESON, JESSICA BURCIAGA, and ROSA ACOSTA

s/ John V. Golaszewski
John V. Golaszewski (#22350)
The Casas Law Firm, P.C.
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@talentrights.law